1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES M. LANIER,  ) | CIV F 09 – 2084 AWI SMS |
| )  | |
| Plaintiff,  ) | MEMORANDUM OPINION |
| )  | AND ORDER ON |
| v.  ) | DEFENDANTS' MOTION TO |
| )  | DISMISS |
| CLOVIS UNIFIED SCHOOL  ) | |
| DISTRICT, TERRY BRADLEY, STEVE ) | |
| WARD, MICHAEL JOHNSTON,  ) | Document # 22 |
| DENNIS LINDSEY, et al.,  ) | |
| )  | |
| Defendants.  ) | |
| )  | |
| _____ ) | |

        This is a civil rights action for damages by *pro se* plaintiff James M. Lanier ("Plaintiff")

against defendants Clovis Unified School District ("Clovis Unified"), the Clovis Unified School

District Board of Education ("School Board") and a number of individual defendants

(collectively, "Defendants").  This action arises out of Plaintiff's repeated attempts to obtain a

contract from Clovis Unified for sports officiating that Plaintiff alleges were unsuccessful

because of racially discriminatory practices by individual defendant, Dennis Lindsey

("Lindsey"), an employee of Clovis Unified with authority to approve contracts for sports

officiating.  In the instant motion, Defendants seek to dismiss all claims for relief set forth in

Case Number 09cv2084.  Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

Venue is proper in this court.

**PROCEDURAL HISTORY**

This action was commenced in Fresno County Superior Court on October 14, 2009, and was removed to this court on November 30, 2009.  Plaintiff filed a prior action in this court on October 8, 2009, in Case Number 09cv1780.  On April 21, 2010, the court issued an order granting Defendants' motions to dismiss all claims in the original complaint and issued an order to show cause why the action filed in Case Number 09cv1780 should not be dismissed as duplicative of the instant action and administratively closed (the "April 21 Order").  Plaintiff filed his First Amended Complaint ("FAC") on May 24, 2010, in Case Number 09cv2084. There have been no further filings in Case Number 09cv1780 and on August 25, 2010, judgment was entered in that case in favor of Defendants and the case was closed.  Hereinafter, the "instant motion" refers to Defendants' motion to dismiss case Plaintiff's FAC in case number 09cv2084.  Defendants filed the instant motion on June 3, 2010.  Plaintiff filed his opposition on June 22, 2010, and Defendants filed their reply on July 12, 2010.  The court vacated the date for hearing on Defendants' motion to dismiss and took the matter under submission as of July 19, 2010.

**FACTUAL ALLEGATIONS**

The following facts are drawn from Plaintiff's FAC are not contested for purposes of the instant motion.  Plaintiff is an African-American male who owns and operates a sports officiating service known as "SportsTime Officials Association" ("SOA").  Plaintiff has, since 2004, been attempting without success to obtain an officiating contract with defendant Clovis Unified School District ("CUSD").  In 2005 Plaintiff applied for and received accreditation from the California Interscholastic Federation allowing him to submit business proposals to CUSD for consideration.  The individual responsible for review of the submitted business proposals and allegedly responsible for the selection of successful bidders was defendant Lindsey.

The FAC details a series of contacts between Plaintiff and Lindsey that occurred

2

between 2005 and 2007.  In each of these years Plaintiff submitted proposals and in each year his proposal was not accepted.[1]  In 2006, Plaintiff alleges he began to question the validity of the reasons given by Lindsey for non-selection of Plaintiff's proposals for officiating.  Particularly, Plaintiff alleges Lindsey commented that Plaintiff lacked sufficient personnel to fully perform the officiating duties proposed when Lindsey knew that Plaintiff drew his officiating personnel from the same pool of qualified officials as every other officiating contractor.  In 2007 a number of messages were exchanged between Plaintiff and defendant Michael Johnston, a person who had administrative oversight of the letting of contracts for officiating services.  Among other things, Plaintiff advised Johnston that Plaintiff's company was certified to perform officiating in 7 sports and was seeking officiating in 5 of its strongest sports, notwithstanding Lindsey's representations to the contrary.  Plaintiff also informed Johnston that Plaintiff's chief rival San Joaquin Valley Officials Association ("SJVOA") had, as a member of its board Ron Haroldsen who was CUSD's paymaster for officiating services.  Plaintiff alleges that officiating Haroldsen's association with Lindsey resulting in a strong bias in favor of SJVOA at the expense of equal access to contracting opportunities for Plaintiff and other African-American contractors.

On August 22, 2007, Plaintiff wrote to Johnston expressing Plaintiff's opinion that the fact that no sports officiating contracts were made available from 2005 through 2007 constituted a violation of CUSD's policy of nondiscrimination.  Significantly, Plaintiff alleges that in February 2008 Plaintiff interviewed again with Lindsey to review Plaintiff's proposal for the school year 2008 - 2009.  In response to Plaintiff's proposal, Lindsay responded that the contracts Plaintiff sought were not available.  While leaving the meeting and out of eyesight of Lindsey, Plaintiff "overheard Lindsey mumble to himself, 'That uppity nigger.  He won't be

---

[1]     Plaintiff's FAC alleges instances in 2005 and 2006 where other qualified African-American sports officiants were either denied equal access to the application process or were removed by Lindsey from contract status on pretextual grounds.  The instances mentioned involve alleged discrimination against persons who are non-parties to this case and so are not relevant to Plaintiff's claims.

1   getting any contracts around here.'" Doc. # 21 at ¶ j.

2       Plaintiff alleges that beginning in 2008, Defendant CUSD began soliciting formal

3   requests for proposal ("RFP's") for 2-year officiating contracts.  Prior to that time the proposal

4   process was informal, consisting only of the presentation of a proposal to CUSD administrative

5   personnel.  Plaintiff also alleges that the outcome of the RFP process in 2008 evinces unlawful

6   race discrimination because Haroldsen, the person who was awarded the contract, was white, an

7   insider associated with Lindsey, and less qualified than SOA to execute the officiating called

8   for.  The RFP that was sent to Plaintiff in 2008 contained a clause that required the all

9   applicants to waive "'all rights to appeal or [to] seek any legal remedy whatsoever regarding any

10  aspect of the RFP, the selection process, the District's review of the proposal, and any

11  agreement that the District may enter into as a result of the proposal submitted.'"  Doc. # 21 at

12  ¶10.  Plaintiff alleges he felt the selection process would be racially biased with regard to the

13  RFP selection process just as it had been in the past.  Plaintiff declined to submit a response to

14  the RFP out of a concern that he would be waiving any legal right to seek redress.

15      Plaintiff's FAC alleges four claims for relief based on federal civil rights law.  Plaintiff's

16  first claim for relief alleges violation of 42 U.S.C. § 1981, which applies Fourteenth

17  Amendment equal protection rights protections to contracting by governmental agencies, against

18  all Defendants.  Plaintiff's second claim for relief is also alleged against all Defendants and

19  alleges Defendants' acts constitute infringement of Plaintiff's Fourteenth Amendment equal

20  protection rights in violation of 42 U.S.C. § 1983.  Plaintiff's third claim for relief alleges

21  Defendants CUSD, Lindsey and Johnson engaged in a conspiracy to deprive Plaintiff of his

22  rights under the Equal Protection Clause of the Fourteenth Amendment in violation of 42 U.S.C.

23  § 1985.  Plaintiff's fourth claim for relief alleges that Defendants School Board Members and

24  CUSD failed to prevent the conspiracy to violate Plaintiff's civil rights in violation of 42 U.S.C.

25  § 1986.  Plaintiff's fifth claim for relief is a collection of "pendant state claims" that are alleged

26  against Defendants school board members and CUSD.  The state claims include violation of

27

28                                          4

1  California Education Code § 220, violation of the California Contract Code §§ 100 - 102, and

2  violation of California Business & Professions Code §§ 17200, et seq.

3                                    **LEGAL STANDARD**

4         A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

5  can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient

6  facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530,

7  533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint

8  must set forth factual allegations sufficient "to raise a right to relief above the speculative level."

9  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("Twombly").  While a court

10 considering a motion to dismiss must accept as true the allegations of the complaint in question,

11 Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and must construe the

12 pleading in the light most favorable to the party opposing the motion, and resolve factual

13 disputes in the pleader's favor, Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S.

14 869 (1969), the allegations must be factual in nature.  See Twombly, 550 U.S. at 555 ("a

15 plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than

16 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

17 do").  The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not

18 require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-

19 unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

20        The Ninth Circuit follows the methodological approach set forth in Iqbal for the

21 assessment of a plaintiff's complaint:

22        "[A] court considering a motion to dismiss can choose to begin by identifying
          pleadings that, because they are no more than conclusions, are not entitled to the
23        assumption of truth.  While legal conclusions can provide the framework of a
          complaint, they must be supported by factual allegations.  When there are well-
24        pleaded factual allegations, a court should assume their veracity and then
          determine whether they plausibly give rise to an entitlement to relief."

25
26 Moss v. U.S. Secret Service, 572 F.3d 962, 970 (9th Cir. 2009) (quoting Iqbal, 129 S.Ct. at

   1950).
27

28                                            5

**DISCUSSION**

**I. Statutes of Limitations**

The court's April 21 Order granted Defendants' motion to dismiss Plaintiff's claim pursuant to 42 U.S.C. § 1983 on the ground the claim was barred by the applicable statute of limitations.  Plaintiff's FAC adds three additional federal civil rights claims and adds a number of facts not alleged in the original complaint.  As Defendants note, Plaintiff also revised the date when he alleges he overheard Lindsey's "uppity nigger" comment from March 2007 in the original complaint to February 2008 in the FAC. Given that the number of federal civil rights claims has multiplied in the FAC and that the factual basis for Plaintiff's claims has been substantially revised and expanded, the court first revisits the issue of statute of limitations with respect to Plaintiff's federal claims.

Because 42 U.S.C. § contains no specific statute of limitations, federal courts borrow state statutes of limitations for personal injury actions in section 1983 suits.  See Wilson v. Garcia, 471 U.S. 261, 276 (1985); Torres v. City of Santa Ana, 108 F.3d 224, 226 (9th Cir. 1997).  The Ninth Circuit has consistently held that the limitations period for an action pursuant to section 1983 is contained in California's general personal injury statute.  See McDougal v. County of Imperial, 942 F.3d 668, 672 (9th Cir. 1991).  Effective January 1, 2003, California's general personal injury statute, which provides for a one-year statute of limitations and had been set forth at Cal. Civ. Proc. Code § 340(3) was shifted to California Code of Civil Procedure, section 335.1, and now provides a limitations period of 2 years.  See Blanas v. Jones, 393 F.3d 918, 927 (9th Cir. 2004); Thompson v. City of Shasta Lake, 314 F.Supp.2d 1017, 1023-1024 (E.D. Cal. 2004) (discussing applicability of California's general residual statute of limitations to actions pursuant to section 1983); Green v. Bloom, 2008 WL 1882800 (E.D. Cal. 2008) at *8 (discussing applicability of limitations period in § 335.1 to federal civil rights claims in light of McDougal v. County of Imperial, 942 F.2d 668 (9th Cir. 1991), which previously applied § 340(3)).  The two-year statute of limitations period applies to claims alleging violation of

Fourteenth Amendment Equal Protection rights whether alleged pursuant to 42 U.S.C. §§ 1981, 1983 or 1985.  McDugal, 942 F.2d 668 at 673-674; Wilson v. City of Fresno, 2009 WL 3233879 (E.D. Cal. 2009) at *11.  Unlike claims brought pursuant to section 1981, 1983, or 1985, the statute of limitations applicable to a § 1986 claim is one year. 42 U.S.C. § 1986; RK Ventures, Inc. V. City of Seattle, 307 F.3d 1045, 1058 (9th Cir. 2002).

Although state law determines the limitations period, federal law governs when a civil rights claim accrues.  Wallace v. Kato, 549 U.S. 384, 388 (2007).  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. Tworivers v. Lewis, 174 F.3d 987, 991 (9th Cir.1999); Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996). "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." De Anza Properties X, Ltd. v. County of Santa Cruz, 936 F.2d 1084,1086 (9th Cir.1991). The California Supreme Court has explained:

> Possession of "presumptive" as well as "actual" knowledge will commence the running of the statute. The applicable principle has been expressed as follows: "when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to his investigation ... the statute commences to run."

Sanchez v. South Hoover Hospital, 18 Cal.3d 93, 101, 132 Cal.Rptr. 657, 553 P.2d 1129 (1976) (citations omitted).  "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Abramson v. Univ. of Hawaii, 594 F.2d 202, 209 (9th Cir.1979) (addressing sex discrimination claim).

### A.  Accrual of Claims Under Two-Year General Injury Statute of Limitations

The earliest date the court could construe the filing of the complaint in this case for purposes of determining the running of statutes of limitations is October 9, 2009, the date of filing of the previous action in state court.  Based on a two-year statute of limitations, Plaintiff may only assert claims against defendants if those claims accrued after October 9, 2007.  In its April 21 Order, the court opined that Lindsey's "uppity nigger" comment, while not actionable

in itself, served as notice of Lindsey's discriminatory intent and therefore marked the latest date upon which Plaintiff's claim pursuant to section 1983 could be said to have accrued. Although the date alleged as the date of Lindsey's comment is changed in the FAC to reflect a date within the 2-year statute of limitations, additional facts alleged by Plaintiff in the FAC demand a reassessment of the date of accrual of Plaintiff's claims.

The FAC alleges that in June of 1997 Plaintiff wrote to Johnston informing Johnston that CUSD had "denied equal access to CUSD's high school and middle school sports officiating contracts . . . in violation of state and federal laws." Doc. # 21 at 7:11-13. While Plaintiff's letter of June 2007 is arguably ambiguous as to the nature of Plaintiff's claim of denial of equal access, Plaintiff's communication of August 22, 2007, to Johnston and Lindsey is completely unambiguous. In that letter Plaintiff alleges he wrote:

> Johnson and Lindsey advising them that CUSD is violating its own nondiscrimination policy, and that officiating services contracts have not been made available to any of the qualified minority CIF contracts in violation of CUSD's policy of nondiscrimination. [Plaintiff] further writes that Defendant Lindsey has continuously exhibited the unwillingness to allow us, minority contractors, access to or exploration of opening up these contract services. Neither Johnston or Lindsey respond to this writing.

Doc. # 21 at 8:7-12.

The facts alleged in the FAC leave no doubt that Plaintiff had formed the opinion not later than August 22, 2007, that his lack of success in being awarded sports officiating contracts in 2005, 2006 and 2007 was the result of racial discrimination. Thus, to the extent Plaintiff's claims for relief are predicated on CUSD's refusal to enter into officiating contracts with Plaintiff in 2005, 2006 or through September of 2007, those claims were asserted more than 2 years after the date of accrual of the claim and so are time-barred under California's applicable statute of limitations.

Although Plaintiff has not argued that the "continuing violation doctrine" might apply in this case, the court addresses the issue briefly. The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged

8

1   in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges

2   alleging that act."  Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)

3   (Morgan").  The Court's decision in Morgan overruled prior authority established in this circuit

4   that had held a discriminatory act taking place outside the limitations period is actionable as part

5   of a "continuing violation" if the acts outside the limitations period were related and similar to

6   acts alleged in charges that were timely filed.  Rk Ventures, Inc. v. City of Seattle, 307 F.3d

7   1045, 1061 (9th Cir. 2002).  Pursuant to Morgan, the continuing violation doctrine applies

8   principally in hostile work environment claims where acts that occurred outside the limitations

9   period are integral to a single claim and where at least some portion of the acts constituting that

10  claim occurred within the limitations period.  Morgan, 536 U.S. at 115.

11        Here, the acts Plaintiff complains of are discrete acts of discrimination that occurred in

12  2005 and 2006, as well as in 2007 prior to October 8, when Plaintiff's contract proposals were

13  turned down for reasons of racial discrimination.  Each was separately actionable as of the date

14  Plaintiff knew or should have known that the reason for rejection of his contract proposals were

15  unlawfully based on race discrimination.  Consequently, the continuing violation doctrine does

16  not apply and Plaintiff is time-barred from asserting any claims that are based on the refusal of

17  Defendants to contract with Plaintiff where Plaintiff's proposal for contract was tendered and

18  rejected prior to October 8, 2007.

19        **B.  Accrual Of Plaintiff's Claim Pursuant to 42 U.S.C. § 1986**

20        As noted above, 42 U.S.C. § 1986 provides that all claims for damages for failure to

21  prevent a civil rights conspiracy shall be brought within one year of the date of accrual of the

22  conspiracy claim.  Although the acts that constitute the conspiracy are somewhat ambiguous, it

23  is clear that those acts occurred concurrently with the bidding process for the 2008 RFP process

24  which began in May 2008 for officiating contracts for the 2008 - 2009 school year.  Plaintiff

25  alleges the RFP's were due on June 12, 2008, for officiating work that would begin when school

26  started in fall.  Plaintiff alleges that Johnston and Lindsey conspired to provide Haroldsen with

27

28                                          9

Plaintiff's "proprietary information" presumably including the names and contact information of the persons Plaintiff normally provided to officiate sports events.  Plaintiff alleges defendants Johnston and Lindsey "conspired to deprive plaintiff of his civil rights by allowing [Haroldsen] unfettered access to Plaintiff's proprietary information so that Haroldsen could obtain the CUSD May 2008 public contract for 'all sports' officiating services while denying Plaintiff access to that contract."  Doc. # 21 at 16:8 - 12.  Plaintiff alleges that the 2008 officiating services contract was awarded to Haroldsen on or about August 2008.

As discussed above, a claim for civil rights violation generally accrues when the Plaintiff knows or should have known his or her civil rights had been violated.  De Anza Properties, 936 F.2d at 1086.  Plaintiff alleges that he declined to submit a proposal in response to Defendants' RFP, in part because he believed that the selection process was biased in favor of Caucasian bidders and that his bid would be consequently rejected. Notwithstanding any ambiguity in Plaintiff's claim for civil rights conspiracy, it is clear that Plaintiff believed that Haroldsen's success as a bidder was due to the latter's status as an insider and to his access to Plaintiff's list of officials.  See Doc. # 21 at 9:19 - 23 (listing factual bases for Plaintiff's allegation that the award of the 2008 - 2009 officiating contract was the result of unlawful bias).  At minimum, Plaintiff's FAC expresses Plaintiff's belief that the elements of the "conspiracy" were complete as of the time the contract for the 2008 - 2009 officiating season was awarded to Haroldsen. The court concludes that Plaintiff had actual knowledge of the elements of his claim of failure to prevent conspiracy as of August 2008 at the latest.  Since Plaintiff's claim was filed on October 8, 2009, at the earliest, his claim pursuant to 42 U.S.C. § 1986 is time barred by the one-year statute of limitations provided by the statute.

## II. Defendants' Motion to Dismiss Plaintiff's First Claim for Relief

Plaintiff's first claim for relief alleges discriminatory treatment in contracting in violation of 42 U.S.C. § 1981.  In broad terms, section 1981 "proscribe[s] discrimination in making or enforcement of contracts against, or in favor of, any race."  McDonald v. Santa Fe

1  Trail Transp. Co., 427 U.S. 273, 295 (1976).  Courts of this circuit analyzing claims of

2  discrimination under federal civil rights statutes employ the burden-shifting framework of

3  McDollell Douglas Corp. v Green, 411 U.S. 792, 802-803 (1973)."  See Lindsey v. SLT Los

4  Angeles, LLC., 447 F.3d 1138, 1144 (9th Cir. 2006) (applying McDonnell Douglas framework

5  in context of Title VII and section 1981 actions); Walker v. Brand Energy Svcs., LLC, 2010 WL

6  2572865 (E.D. Cal. 2010) at *9.

7  > Under McDonnell Douglas, if the plaintiff satisfies the initial burden of
> establishing a *prima facie* case of racial discrimination, the burden shifts to the

8  > defendant to prove it had a legitimate non-discriminatory reason for the adverse
> action. [. . . .] If the defendant meets that burden, the plaintiff must prove that

9  > such a reason was merely a pretext for intentional discrimination.

10  Lindsey, 447 F.3d at 1144 (internal citations and footnotes omitted).

11       The type of contract at issue in Plaintiff's FAC is a professional services contract, not an

12  employment contract.  In McDonnell Douglas, the Supreme Court set forth the elements of a

13  *prima facie* case for discrimination in the context of an action for employment discrimination

14  under Title VII.  Those elements included: (1) that the plaintiff belongs to a racial minority; (2)

15  that the plaintiff applied ad was qualified for a job for which the employer was seeking

16  applicants; (3) that, despite his or her qualifications, the plaintiff was rejected; and (4) that, after

17  the rejection, the position remained open and the employer continued to seek applicants from

18  persons of the plaintiff's qualifications.  411 U.S. 792, 802.  Where the contract in question is

19  commercial and not employment, courts of this circuit have modified the McDonnell *prima*

20  *facie* elements by omitting the last element.  Thus, the formulation used commonly in this

21  circuit requires that the plaintiff, in order to show a *prima facie* case if discrimination in the

22  context of a commercial contract must show (1) he or she was a member of a protected class; (2)

23  the plaintiff attempted to contract for certain services; and (3) the plaintiff was denied the right

24  to contract for those services.  Lindsey, 447 F.3d at 1145; Ahmed v. Mid-Columbia Med. Ctr.,

25  673 F.Supp.2d 1194, 1205 (D. Or. 2009).

26       Defendants assert three arguments to support their motion for dismissal of Plaintiff's

28                                                 11

section 1981 claim.  First, Defendants contend that Plaintiff failed to state a claim upon which relief can be granted because Plaintiff failed to allege the *prima facie* elements of a claim of discrimination.  Second, Defendants contend Plaintiff failed to show that he was damaged because he failed to show that he was entitled to be awarded any contract.  Third, Defendants contend that the individual Defendants and CUSD are entitled to qualified immunity.

The fact that stands out as an impediment to the establishment of Plaintiff's *prima facie* case for discrimination is the fact that he did not submit a proposal for contract at any time during the limitations period and so was not directly denied any right of contract during that period.  Plaintiff, both in the FAC and in his opposition to Defendants' motion to dismiss, alleges he decided not to respond to CUSD's RFP for the 2008 - 2009 school year because he did not agree to the waiver language contained in the RFP and because he felt he would be subject to the same discriminatory treatment as he had experienced from 2005 through 2007.  As previously discussed, the instances of discriminatory treatment Plaintiff complains of are discontinuous in nature and those discriminatory actions that occurred prior to October 8, 2007, are not actionable because they are time barred.  It follows that, in order to assert a claim upon which relief may be granted, Plaintiff must allege the *denial* of the right to contract that occurred after October 8, 2007.

Plaintiff admits he was afforded the opportunity to submit an RFP in 2008 but declined.  Because Plaintiff did not assert the desire to enter into a contract by responding to the RFP, Defendants had no cause to award Plaintiff a contract and Plaintiff had no reasonable expectation of being awarded a contract.  In short, Plaintiff cannot claim to have been injured by not having been award a contract that he did not apply for.  To the extent that Plaintiff's claim under section 1981 is based on the waiver language in the RFP, the language contained in the RFP, although objectionable to Plaintiff, did not amount to a legal impediment to the filing of a response to the RFP.

Whatever Plaintiff's subjective feelings may have been at the prospect of having his

proposal for a sports officiating rejected again, the gravamen of a claim pursuant to section 1981 is the denial of a right to contract. Plaintiff could only have suffered an injury in fact of that right by placing himself in a position to be injured; that is, by submitting a proposed contract that would then be rejected for reasons of racial animus. Plaintiff did not place himself in harm's way and therefore suffered no harm. Having suffered no cognizable harm within the applicable limitations period, Plaintiff has failed to state a claim for which relief can be granted.

The court declines to address Defendants' argument that Plaintiff has failed to state a claim for which relief may be granted because he has failed to allege he was the low bidder pursuant to Cal. Pub. Contract Code § 20128. There are two reasons for this. First, and most obviously, since Plaintiff does not allege that he submitted any contract proposals within what the court had determined to be the applicable limitations period, any statute requiring CUSD to award any contract to the low cost bidder does not come into play. Second, while a public entity may be required under section 20128 to award a contract to the low cost qualified bidder, the authority cited by Defendants does not establish the proposition that conformity with section 20128 is a pleading requirement for a claim pursuant to 42 U.S.C. § 1981. While there is no doubt that a defendant in an action pursuant to section 1981 could challenge a claimant's status as the lowest cost qualified bidder on summary judgment, it is not at all clear to the court that a plaintiff bringing such a claim could reasonably be expected to have access to the information necessary to allege their status as the low-cost qualified bidder at the time of filing of the complaint. Lacking any information to the contrary, the court concludes that any challenge to an action for failure to conform to Cal. Pub. Contract Code § 20128 is properly a matter for summary judgment, not for a motion to dismiss.

The court also declines to address Defendants' arguments regarding qualified immunity. Since there were no bids for contracts by Plaintiff within the applicable limitations period, there was no constitutional injury and the argument of qualified immunity does not come into play.

13

1    **III. Defendants' Motion to Dismiss Plaintiff's Second Claim for Relief**

2          Plaintiff's second claim for relief alleges Defendants infringed Plaintiff's rights under

3    the Equal Protection Clause of the Fourteenth Amendment in violation of 42 U.S.C. § 1983.

4    Unfortunately, the FAC does not specify precisely what acts constitute infringement of

5    Plaintiff's equal protection rights.  As previously noted, Defendants' refusal to award contracts

6    for officiating services to Plaintiff in 2005, 2006 and up to October 8, 2007, are not actionable

7    because the 2-year statute of limitations bars any action based on those discrete events.  Also as

8    discussed above, the fact that Plaintiff declined to provide Defendants with a proposal for

9    contract in 2008 or in 2010 even though invited to do so means that Plaintiff could not have

10   been denied the right to contract during those years.

11         The FAC suggests that a basis for Plaintiff's section 1983 claim may rest on the waiver

12   language contained in the RFP's for both 2008 and 2010.  Defendants argue that the waiver in

13   the RFP's does not constitute a deprivation of any constitutional right and the court agrees.  A

14   waiver, such as the waiver contained in Defendants' RFP's, is not the surrender of a

15   fundamental right, it is simply a contractual term that may limit some legal remedies under some

16   conditions.  There is no denial of a fundamental right until one party to the contract invokes the

17   waiver provision in an attempt to prevent the other party from vindicating a violation of a

18   fundamental right in court.  As Defendants point out, in cases such as the case at bar where the

19   right at stake is both fundamental and constitutionally rooted, courts will declare any waiver that

20   seeks to prevent the vindication of such right unenforceable.  Johnson v. Zerbst, 304 U.S. 458,

21   464 (1938).  The contract provision would be severed from the contract and the claimants right

22   to vindicate his or her fundamental right in court would be preserved.

23         To the extent it may be Plaintiff's contention that the waiver itself is somehow racially

24   biased, the court finds such contention unsupported by the alleged facts.  Defendants allege the

25   waiver language is included in all service contract RFP's, that it applies to all racial groups alike

26   and that it has the non-discriminatory purpose of limiting suits by disappointed would-be

27

28                                              14

1    contractors.  The court finds that, under the McDonnell Douglas shifting-burden analytical

2    framework, Defendants have articulated a non-discriminatory reason for the inclusion of the

3    waiver language in their RFP's.  Plaintiff has the burden to show the non-discriminatory

4    purpose behind the waiver language is pretextual, but has failed to make the required showing.

5    Thus, to the extent Plaintiff's section 1983 claim is based on the waiver language contained in

6    the RFP's provided to Plaintiff, the court finds Plaintiff has failed to sufficiently support the

7    claim.

8          To the extent Plaintiff may have intended that his section 1983 claim is based on other

9    discriminatory acts by Defendants, the court will not further speculate as to what those acts

10   might be.  The court finds that Plaintiff has failed to state a claim pursuant to 42 U.S.C. § 1983

11   upon which relief might be granted.

12   **IV.  Plaintiff's Third Claim for Relief for Conspiracy**

13         To state a claim under § 1985, Plaintiff must show: (1) an agreement or meeting of the

14   minds by the defendants to deprive him of his constitutional rights; (2) a causal relationship

15   between the alleged acts done in furtherance of the conspiracy and his resulting injury; (3) a

16   deprivation of rights under § 1983 on which the conspiracy claim is predicated; and (4) some

17   racial or class-based invidious discrimination.  See Caldeira v. County of Kauai, 866 F.2d 1175,

18   1181-82 (9th Cir.1989); see also Cassettari v. County of Nev., Cal., 824 F.2d 735, 739 (9th

19   Cir.1987).

20         Plaintiff's third claim for relief somewhat confusingly alleges that CUSD and individual

21   Defendants Lindsey and Johnston "conspired to deprive Plaintiff of his civil rights by allowing

22   Ronald Haroldsen unfettered access to Plaintiff's proprietary information so that Haroldsen

23   could obtain the CUSD May 2008 public contract for 'all sports' officiating services while

24   denying Plaintiff access to that contract."  Doc. # 21 at 16:8 - 12.  As the court interprets

25   Plaintiff's conspiracy claim, the gravamen of the claim is the denial of equal access to the

26   officiating contract.  Access of Haroldsen to Plaintiff's proprietary information is an act in

27

28                                        15

1   furtherance of that conspiracy.  As such, Plaintiff's conspiracy claim and § 1983 claim are based

2   on essentially the same allegation; that is, the allegation that Defendants denied Plaintiff the

3   right to contract for sports officiating services based on Plaintiff's race.  As noted above,

4   Plaintiff has failed to show a deprivation of rights under § 1983 because he has failed to

5   demonstrate a cognizable constitutional injury that occurred within the statutory limitations

6   period. The absence of the § 1983 claim thus precludes the § 1985 conspiracy claim. See

7   Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir.2005).

8        Because the court will dismiss Plaintiff's conspiracy claim for failure to allege facts

9   sufficient to show a cognizable injury within the statutory period, the court will decline to

10  address the Defendants' other bases for dismissal.

11  **V.  Plaintiff's Fifth Claim for Relief for Failure to Protect**

12       As previously noted, 42 U.S.C. § 1986 provides its own one-year statute of limitations.

13  The court has concluded that Plaintiff's claim under section 1986 accrued more than one year

14  from the date of filing of this action.  Plaintiff's claim pursuant to section 1986 is therefore time

15  barred.

16  **VI.  Plaintiff's State Claims for Relief**

17       The court's jurisdiction over Plaintiff's state court claims is supplemental.

18  Supplemental jurisdiction is a doctrine of discretion, not of right.  City of Chicago v.

19  International College of Surgeons, 522 U.S. 156, 172 (1997).  The court may decline to exercise

20  supplemental jurisdiction over a claim if:

21           (1) the claim raises a novel or complex issue of State law,
             (2) the claim substantially predominates over the claim or claims over which the
22           district court has original jurisdiction,
             (3) the district court has dismissed all claims over which it has original
23           jurisdiction, or
             (4) in exceptional circumstances, there are other compelling reasons for declining
24           jurisdiction.

25  28 U.S.C. § 1367(c).

26       Once no federal causes of action remain in a given case, it is within the discretion of the

27

28                                        16

1  district court to determine whether to dismiss the remaining claims.   28 U.S.C. § 1367(c)(3);

2  United Mine Workers v. Gibbs, 383 U.S. 715, 726  (1966);   Nishimoto v. Federman-Bachrach

3  & Associates, 903 F.2d 709, 715 (9th Cir.1990).   Given the early stage of these proceedings, the

4  court finds that the values of judicial economy, convenience, fairness, and comity would best be

5  served if any state law claims were litigated in state court.   The court therefore declines to assert

6  supplemental jurisdiction over Plaintiff's remaining state claims.   Those claims will be

7  dismissed.

8  **CONCLUSION AND ORDER**

9       Each of Plaintiff's claims for relief as set forth in the FAC allege discriminatory conduct

10  that occurred between October 14, 2007 and the present.   Thus, Plaintiff's FAC appears to

11  acknowledge, at least implicitly, that Plaintiff had knowledge of the racially biased nature of

12  Defendants' alleged conduct prior to October 14, 2007, and that his claims of discrimination had

13  to be based on Defendants' conduct within the statutory period; that is, within two years of the

14  filing date of this action.   With that as backdrop, the court's determination that Plaintiff has

15  failed to allege any federal claims for which relief can be granted should be understood to rest

16  on a simple principle: a person cannot be deprived of a right they did not assert.   While

17  Plaintiff's subjective feelings of reluctance to place himself in the path of the same

18  discriminatory conduct is understandable, the fact remains that a claim will not lie where there

19  is only an allegation of past discrimination that lies outside the statutory limitations period.   To

20  be actionable, a claim must be based on *actual harm* within the statutory period and the only

21  way Plaintiff could have been subjected to such harm is if he had submitted proposals for

22  contract in response to RFP's in 2008 and 2010 and had been rejected.   Because there is no

23  doubt that Plaintiff did not subject himself to discriminatory conduct in 2008 and 2010, the

24  court can find no basis upon which Plaintiff could amend his complaint to state a claim.   Leave

25  to amend will therefore be denied and Plaintiff's complaint will be dismissed with prejudice

26  without leave to amend.

27

28 17

1    THEREFORE, for the reasons discussed above, it is hereby ORDERED that Defendants'

2    motion to dismiss Plaintiff's First Amended Complaint is hereby GRANTED.  Plaintiff's First

3    Amended Complaint is DISMISSED with prejudice.  The Clerk of the Court shall CLOSE THE

4    CASE.

5

6    IT IS SO ORDERED.

7

8    Dated:    September 17, 2010    _____

                                     CHIEF UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   18